# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ISAIAH STACY ALSTAD,

Defendant.

Criminal No. 20-243 (JRT/ECW)

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO VACATE
SENTENCE UNDER 28 U.S.C. § 2255**

---

Katherine T. Buzicky, **UNITED STATES ATTORNEY'S OFFICE**, 316 North Robert Street, Suite 404, Saint Paul, MN 55101; Benjamin Bejar, Craig R. Baune, Quinn Askew, Thomas Calhoun-Lopez, and William C. Mattessich, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Robert Meyers, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant.

Defendant Isaiah Stacy Alstad is serving a 110-month sentence after pleading guilty to Aiding and Abetting Carjacking in violation of 18 U.S.C. §§ 2, 2219(1). He did not appeal his sentence. He now moves to vacate his sentence under 28 U.S.C. § 2255, claiming that he only pled guilty due to ineffective assistance of counsel. After an evidentiary hearing and a comprehensive examination of the record, the Court has identified nothing indicating that Alstad's counsel provided ineffective assistance. Accordingly, the Court will deny the motion to vacate Alstad's sentence under 28 U.S.C. § 2255.

**BACKGROUND**

On December 15, 2020, Alstad was charged with participating in a conspiracy to commit a series of criminal acts around the Twin Cities in the wake of the murder of George Floyd. (Superseding Indictment, Docket No. 38.) An attorney was appointed to represent Alstad. (Order Appointing Att'y at 1, Dec. 17, 2020, Docket No. 50.)

Alstad's first counsel moved to dismiss two counts charged against Alstad, but the Court denied the motion. (Order Adopting R. & R. at 1, Mar. 24, 2022, Docket No. 381.) Alstad then underwent a psychiatric evaluation to determine whether he was competent to stand trial, but it yielded no evidence of conditions impairing his competence. (Mental Competency Rep. at 6, 9–10, Nov. 18, 2021, Docket No. 328.) Shortly thereafter, Alstad's first counsel withdrew because Alstad was refusing to assist in his defense. (Order, Nov. 30, 2021, Docket No. 337.) Attorney George R. Dunn was subsequently appointed as Alstad's counsel. (Order Appointing Att'y at 1, Dec. 1, 2021, Docket No. 338.)

Less than two months later, Alstad filed a motion to replace Dunn. (Mot. Withdraw Counsel, Jan. 24, 2022, Docket No. 356.) Magistrate Judge Hildy Bowbeer held a *Faretta* hearing outside the presence of the United States to address the motion. (Minute Entry at 1, Feb. 14, 2022, Docket No. 365.) Alstad testified that Dunn had not provided him with all the evidence the United States had against him, was manipulating him into accepting a plea agreement, and was refusing to address alleged defects in the Superseding Indictment. (Mots. Hr'g Tr. at 2:22–4:3, 4:7–6:5, 6:7–23, Jan. 30, 2024, Docket No. 527.) Dunn explained that he had sent Alstad all the evidence he had received from the United

States, aside from Facebook evidence that he could only review at the United States Attorney's Office. (*Id.* at 7:4–12, 7:17–8:2, 8:5–17.)  In addition, Dunn shared that Alstad seemed frustrated when they discussed plea negotiations. (*Id.* at 17:3–18:6, 18:11–14.)  After hearing from both sides, the Magistrate Judge found that Dunn was providing adequate assistance and denied Alstad's motion for new counsel. (*Id.* at 19:9–21:17.)

Several months later, Alstad pled guilty to two counts of Aiding and Abetting Carjacking in violation of 18 U.S.C. §§ 2, 2119(1) before the Court. (Plea Agreement, Apr. 26, 2022, Docket No. 398.)  At the change of plea hearing, Alstad voiced his disagreements with Dunn, as well his disagreements with the evidence, plea agreement provisions, and the criminal history category provided in the plea agreement. (Change of Plea Hr'g Tr. at 15:15–24, 17:7–20, 22:7–9, 22:12–23:1, 25:25–26:13, 26:16–27:8, 28:17–29:1, Sept. 6, 2023, Docket No. 503.)  Alstad also voiced his concerns regarding the Court's future sentencing decision and the possible consequences of accepting the plea agreement. (*Id.* at 18:11–19:3, 20:5–17.)  The Court offered Alstad multiple opportunities to change his mind regarding the plea, but ultimately Alstad pled guilty, and the Court accepted his plea. (*Id.* at 27:9–13, 27:20–25, 28:3–8, 28:17–29:1, 29:21–30:1, 52:23–53:18.)  Alstad agreed that he had been satisfied with the advice and assistance that Dunn provided to him. (*Id.* at 32:20–23.)  He waived both his right to appeal a sentence at or below 150 months' imprisonment and his right to seek postconviction relief, except for a claim of ineffective assistance of counsel. (Plea Agreement ¶ 12.)

-3-

At sentencing, the Court sentenced Alstad to a below-range sentence of 110 months for both counts, to run concurrently. (Sentencing J. at 2, Sept. 1, 2022, Docket No. 444.) Alstad did not appeal his sentence.

About a year after his sentencing, Alstad moved to vacate his sentence under 28 U.S.C. § 2255, arguing that he only pled guilty because Dunn provided ineffective assistance of counsel. (Mot. Vacate Under 28 U.S.C. § 2255 ("Mot. Vacate"), Aug. 18, 2023, Docket No. 493.) The Court conducted an evidentiary hearing regarding Alstad's and Dunn's conflicting statements as to whether Alstad requested Dunn to appeal. *Witthar v. United States*, 793 F.3d 920, 923–24 (8th Cir. 2015) ("When a district court receives conflicting statements—one from a § 2255 petitioner and one from her former counsel—the court cannot make a factual determination based on the relative credibility of these individuals without the benefit of an evidentiary hearing." (cleaned up)). The Court appointed Alstad new counsel for the evidentiary hearing. (Order for Appointment of Counsel at 1, Apr. 30, 2024, Docket No. 532.) Both Dunn and Alstad testified at the hearing.

Dunn testified that he has been practicing as a criminal defense attorney since he was admitted in 1986 and that "[m]ost of [his] work in federal court involves" cases involving violent crimes, guns, or drugs. (2255 Mot. Hr'g Tr. at 5:21–6:1, 6:9–20 Sept. 9, 2024, Docket No. 545.) When a client wishes to appeal, Dunn explained that he "file[s]

-4-

the notice of appeal," which generally takes "minutes" of his time, before transferring the case to another attorney to handle the appeal process. (*Id.* at 8:12–22, 9:2–8.)

Regarding his representation of Alstad, Dunn testified that soon after the sentencing hearing he sent Alstad a letter, in which he "confirm[ed] the conversation we had prior to your sentencing/following your sentencing that you did not want me to file an appeal of the sentence." (*Id.* at 12:1–3, 12:20–13:3.) Dunn explained that while he did not specifically recall the discussion with Alstad before the sentencing hearing, he did recall their discussion afterwards, which he described as "quite friendly." (*Id.* at 13:2–9.) Dunn testified that Alstad "never told" Dunn that he wanted to appeal his sentence, even during the several conversations that they had in the weeks after the sentencing. (*Id.* at 15:16–16:8.) Dunn explained, however, that if Alstad had changed his mind about an appeal, "I would have said no problem," filed the notice of appeal, and then transferred the case to another attorney to handle the appeal process. (*Id.* at 16:9–21.)

In contrast, Alstad testified that he told Dunn he wanted to appeal. Alstad claims that after the sentencing he told Dunn, "[Y]ou heard what John Tunheim said. He said it's my right, and I get 14 days to appeal my conviction, and I told him to appeal it, and he told me no." (*Id.* at 45:17–46:6.) Alstad also alleged that Dunn told him he did not "want to go against the prosecutor and that [Alstad] will lose [his] acceptance of responsibility." (*Id.* at 46:7–9.) Alstad testified he is "positive" he told Dunn to appeal the sentencing. (*Id.* at 46:15–17.) He also testified that during a video teleconference with Dunn two

weeks after the sentencing, he again asked Dunn to appeal, but Dunn again refused and wanted Alstad to "sign a waiver" that he would not file an appeal. (*Id.* at 46:21–47:19.) Alstad stated he never received the letter from Dunn confirming their conversation that Alstad did not wish to appeal his sentence. (*Id.* at 50:6–10.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Section 2255 allows a federal prisoner a limited opportunity to seek postconviction relief on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

### II.    ANALYSIS

Alstad claims he is entitled to postconviction relief because his constitutional right to counsel was violated. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *Washington v. Moore*, 421 F.3d 660, 661 (8th Cir. 2005). A defendant claiming ineffective assistance of counsel must satisfy the two-part *Strickland* test by showing "(1) his attorney's performance fell below

an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). The defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Weaver v. United States*, 793 F.3d 857, 860 (8th Cir. 2015) (quoting *Strickland*, 466 U.S. at 689). "To overcome that presumption, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694).

Alstad lists three grounds[1] in support of his § 2255 motion. He claims he was denied effective assistance (1) based on his attorney's alleged conflict of interest, (2) during sentencing, and (3) because his attorney did not appeal Alstad's sentence, despite Alstad's alleged request that he do so. The Court will analyze each ground in turn.

---

[1] Alstad originally raised four grounds in support of his § 2255 motion. But he has since conceded that his argument that Dunn erred by failing to move to dismiss the two counts to which Alstad pleaded guilty was "meritless and should be denied." (Def.'s Reply at 4, Apr. 5, 2024, Docket No. 531.) The Court will therefore deny as moot relief under § 2255 on that ground.

A.    **Conflict of Interest**

Alstad first argues that his attorney had a conflict of interest because his attorney was divulging information to Alstad's family to pressure him to sign a plea agreement.

A conflict-of-interest claim may be pursued in two ways: (1) under the *Cuyler* presumption of ineffective assistance for joint or serial representations, or (2) under the traditional *Strickland* test.  Under either standard, Alstad's conflict-of-interest claim fails.

1.    *Cuyler* **Analysis**

First, Alstad has not established that he was deprived effective assistance of counsel under *Cuyler*.

A defendant who can show (1) "an actual conflict of interest" that (2) "adversely affected his lawyer's performance" will benefit from a presumption of prejudice.  *Covey v. United States*, 377 F.3d 903, 906–07 (8th Cir. 2004) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).  However, that presumption is limited to claims against attorneys who "actively represented conflicting interests."  *United States v. Acty*, 77 F.3d 1054, 1057 (8th Cir. 2006).  Absent that categorical presumption, a defendant must pursue a traditional *Strickland* claim for ineffective assistance.

Alstad does not allege that his attorney actively represented two different clients with conflicting interests.  Therefore, his claim would necessarily require expanding *Cuyler* to new contexts.  Thus far, the Supreme Court has declined to go down that path.  *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (noting that some circuits have "unblinkingly" applied *Cuyler* to all conflict-of-interest cases but that "the language of *Sullivan* itself does

-8-

not clearly establish, or indeed even support, such expansive application"). The Eighth Circuit has struggled with the question of whether *Cuyler* extends beyond pure joint representation cases to ones that involve serial representation. *See Covey*, 377 F.3d at 907 (listing cases); *see also Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010). But "where the alleged conflict involves ethical issues other than multiple or serial representation, . . . *Strickland* is still the appropriate standard." *United States v. Young*, 315 F.3d 911, 915 (8th Cir. 2003).

Here, Alstad argues Dunn had a conflict of interest because Dunn's interests "diverge[d] with respect to some factual or legal issues" and he "violated the duty" by speaking with Alstad's family about the case and showing them evidence after Alstad told him not to.[2] (Mot. Vacate at 4; Def.'s Br. at 1, Sept. 3, 2024, Docket No. 544.) According to Alstad, his family "was peer pressuring [him] to sign the plea agreement." (Def.'s Br. at 1.) In addition, Alstad claims he felt he "had no choice" but to sign the plea agreement due to the deadline that the prosecutor gave Alstad to sign the agreement. (*Id.*)

Regardless of the merits of these claims, Alstad has not alleged joint or serial representation of conflicting interests. Therefore, at least in the Eighth Circuit, the *Cuyler* presumption does not apply.

---

[2] Alstad's step-father and mother filed affidavits confirming that they spoke with Dunn after the *Faretta* hearing in February 2022, and that Dunn "showed [them] some of the evidence that the government had against [Alstad]." (Affidavits, Oct. 22, 2024, Docket No. 550.)

2.    *Strickland* **Analysis**

Alstad has also not established that he was denied effective assistance of counsel based on an alleged conflict of interest under *Strickland*.

To succeed under an ineffective assistance claim, Alstad must demonstrate that Dunn's alleged conflict of interest resulted in deficient performance that prejudiced Alstad. *Strickland*, 466 U.S. at 687. "In assessing counsel's performance, courts defer to reasonable trial strategies and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 689). Alstad has not overcome this presumption.

Alstad's conflict-of-interest claim suffers from two deficiencies: he has not clearly articulated a conflict of interest, nor has he demonstrated prejudice.

To start, Alstad's "general dissatisfaction or disagreements" with Dunn over case strategy are insufficient to support a conflict-of-interest claim because "there is no right to an attorney who will docilely do as [he] is told or advance meritless legal theories." *United States v. Jones*, 662 F.3d 1018, 1025–26 (8th Cir. 2011) (internal quotation marks omitted). "[J]ustifiable dissatisfaction necessitating new counsel can arise from an irreconcilable conflict between the defendant and the attorney, a complete breakdown in their communications, or an actual conflict of interest resulting from continued representation." *United States v. Rodriguez*, 612 F.3d 1049, 1054 (8th Cir. 2010). But Alstad has not demonstrated any such circumstances. Despite Alstad's argument that he

-10-

and Dunn had a complete breakdown in their communications, the Magistrate Judge and the Court inquired thoroughly into Alstad's relationship with Dunn and determined that their communications were adequate, and that Dunn had provided Alstad with all the evidence he could have provided. *Jones*, 662 F.3d at 1026 ("[W]hen a defendant raises a seemingly substantial complaint about counsel, the judge has an obligation to inquire thoroughly into the alleged problem."). Thus, Alstad's dissatisfaction or disagreement with the case strategy decisions that Dunn made in his reasoned legal judgment do not supply a basis for an actual conflict of interest.

Second, even assuming that Dunn spoke with Alstad's parents after the *Faretta* hearing, Alstad has not demonstrated that Dunn shared confidential communications between Alstad and Dunn that were made for the purposes of obtaining legal advice, which would be the communications protected by attorney-client privilege. *United States v. Ivers*, 967 F.3d 709, 715–16 (8th Cir. 2020). Thus, any such communications do not indicate that Dunn had an actual conflict of interest.

Finally, the fact that the prosecution enforced a deadline by which Alstad had to sign or not sign the plea agreement does not support Alstad's conflict-of-interest claim. There are speedy trial rules entitling defendants to have their case resolved within a certain period of time. *See United States v. Aldaco*, 477 F.3d 1008, 1016 (8th Cir. 2007) (explaining that federal criminal defendants "must be brought to trial within seventy days of his indictment or arraignment (whichever is later)"). The fact that Alstad had a limited

period of time within which to consider the plea agreement does not indicate that Dunn had an actual conflict of interest in this case.

Alstad has not therefore demonstrated an actual conflict of interest that would constitute deficient performance under *Strickland*.

Even if he had, however, Alstad has not demonstrated that he was prejudiced. "A showing of prejudice requires a determination by the court that 'there is a reasonable probability [sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Covey*, 377 F.3d at 909 (quoting *Blankenship*, 159 F.3d at 338).

Alstad argues that Dunn's alleged conflict of interest adversely affected his performance because: (1) he failed to file a motion to dismiss the Superseding Indictment as fatally defective, (2) he had a "breakdown in communication" with Alstad, and (3) he "failed to explain the evidence as it bears on each essential element to establish guilt," such that Alstad could rationally comprehend whether to stand trial or to plead. (Mot. Vacate at 4–5.) Alstad claims that but for the conflict, "a reasonable probability existed that [he] would have insisted on a trial." (*Id.* at 5.)

Nevertheless, the record does not support Alstad's claims. Alstad has since dropped his argument that Dunn erred by failing to move to dismiss the Superseding Indictment. (*See* Def.'s Reply at 4, Apr. 5, 2024, Docket No. 531.) And Dunn's decisions to not file motions or raise arguments that in his reasoned legal judgment were meritless

are "virtually unchallengeable." *Loefer v. United States*, 604 F.3d 1028, 1030 (8ᵗʰ Cir. 2010).  Moreover, the Magistrate Judge and the Court "inquire[d] thoroughly" into Alstad's relationship with Dunn at the *Faretta* hearing and the change of plea hearing and concluded Dunn had provided Alstad with all the evidence that he could have provided. *Jones*, 662 F.3d at 1026.  Furthermore, the Court provided Alstad with multiple opportunities to change his mind at the change of plea hearing, and Alstad affirmatively indicated that he understood the ramifications of that decision and wanted to plead guilty.  A defendant's post-hoc insistence on a trial after pleading guilty is "inherently unreliable." *United States v. McHenry*, 849 F.3d 699, 706 (8ᵗʰ Cir. 2017) ("Allegations that contradict a defendant's statements at the change of plea hearing 'are inherently unreliable.'").  Thus, Alstad has not shown that any alleged conflict of interest adversely effected Dunn's performance.

Alstad has failed to demonstrate that he was denied effective assistance of counsel based on an actual conflict of interest under *Cuyler* or *Strickland*.  Accordingly, the Court will deny him relief under § 2255 on this ground.

### B.  Sentencing Advocacy

Next, Alstad argues Dunn provided deficient performance during sentencing based on several alleged errors.  However, the record contradicts Alstad's claims that Dunn's performance during sentencing was constitutionally deficient.

First, Alstad argues that Dunn erred by failing to request a downward variance due to the harsh pre-trial confinement conditions brought about by the COVID-19 pandemic or Alstad's lack of maturity at the time he committed the offenses.

Courts have considered the harsh confinement conditions brought about by the Covid-19 pandemic and mental immaturity during sentencing. *See, e.g.*, *United States v. Estrada*, No. 19-5058, 2021 WL 1626309, at *1 (S.D. Cal. Apr. 27, 2021) (harsh confinement); *United States v. Allen*, 250 F. Supp. 2d 317, 320–21 (S.D.N.Y. 2003) (mental immaturity).  But counsel is not required to raise every conceivable argument in providing constitutionally sufficient representation.  Indeed, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and do not amount to deficient performance.  *Rice*, 449 F.3d at 897.

Here, Dunn filed objections to the Presentence Investigation Report and moved for a downward variance based on Alstad's "life history and personal circumstances."  (Def.'s Mot. Downward Variance at 1, Aug. 15, 2022, Docket No. 434; *see also* Def.'s Obj., July 14, 2022, Docket No. 423.)  Moreover, Dunn largely conveyed the arguments regarding the harsh pre-trial confinement conditions from the pandemic and Alstad's lack of maturity in his sentencing submissions.  For example, Dunn presented information about Alstad's maturity and mental health evaluation.  (Def.'s Position on Sentencing, 5, at 7–9, Aug. 15, 2022, Docket No. 435.)  Dunn also requested a downward variance based on the two years of "hard time" that Alstad had already served and the fact that he contracted

COVID-19 while incarcerated at Sherburne County Jail. (*Id.* at 2–3.) The fact that Dunn did not file separate motions raising such arguments does not amount to ineffective assistance, as such decisions are virtually unchallengeable. In the end, Dunn's sentencing advocacy secured a downward variance with a below-range sentence for Alstad. Dunn's representation during sentencing surely did not fall outside the "wide range of reasonable professional assistance" that is presumed to be constitutionally sufficient. *Strickland*, 466 U.S. at 689.

Second, Alstad argues Dunn erred by failing to object to enhancements for felon in possession of a firearm in connection with a "crime of violence" in the wake of *United States v. Taylor*, 596 U.S. 845 (2022). In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) and therefore cannot be used as a predicate "crime of violence" for § 924(c) charges. *Id.* at 851–52.

Alstad appears to take issue with the fact that Dunn did not object to enhancements applied to his offense under USSG § 2B3.1 in light of the *Taylor* holding. At sentencing, the Court applied a 5-level upward adjustment to both counts charged against Alstad because a firearm was brandished during the offense, pursuant to USSG § 2B3.1(b)(2)(C). (PSR ¶¶ 53, 60, Aug. 1, 2022, Docket No. 428; Sentencing Hr'g Tr. at 3:18–21, 3:24–4:1, Sept. 19, 2023, Docket No. 505.) The Court also applied a 2-level

upward adjustment to both counts because the offenses involved carjacking, pursuant to USSG § 2B3.1(b)(5).  (PSR ¶¶ 54, 61; Sentencing Hr'g Tr. at 3:21–22, 4:1–3.)

Despite Alstad's arguments, the *Taylor* decision is immaterial to Alstad's enhancements.  Alstad's enhancements were applied because the underlying offenses involved brandishing firearms and carjacking.  *See* USSG § 2B3.1(b)(5).  Any disagreement Alstad has with respect to whether carjacking involves the use of violent force is inconsistent with the law and guidelines, and thus insufficient to demonstrate his counsel's performance was deficient.  USSG § 2B3.1 cmt. n.1 ("'Carjacking' means the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation.").

Third, Alstad takes issue with his criminal history category.  He argues that his criminal history category was overstated, as he has "never been to prison a day in [his] life" and has not been convicted of a felony before.  (Change of Plea Hr'g Tr. at 17:7–9.)

Despite Alstad's arguments, however, Dunn did challenge Alstad's criminal history category.  The Presentence Investigation Report recommended that Alstad fall into criminal history category VI.  (PSR ¶¶ 104–05.)  At the change of plea hearing, Dunn explained to the Court that Alstad's criminal history category results from "a lot of what's deemed as misdemeanors in Minnesota that have added up unfortunately to a high score."  (Change of Plea Hr'g Tr. at 31:18–24.)  Dunn ultimately moved for a downward departure, arguing that Alstad's criminal history category substantially overrepresented

the seriousness of his criminal history. (Def.'s Mot. for Downward Departure at 1, Aug. 15, 2022, Docket No. 433.) At the sentencing hearing, Dunn again urged the Court to consider the fact that even though Alstad has "considerable" criminal history points, he had not served much prison time on those cases. (Sentencing Hr'g Tr. at 4:21–5:8.) Nevertheless, the Court denied the motion, finding that a downward departure motion for criminal history was "not supported by the record" but that the underlying factors argued before the Court were ones that the Court could consider in determining the appropriate sentence. (*Id.* at 6:24–7:10.) Dunn's efforts to challenge Alstad's criminal history do not amount to deficient performance.

Because Alstad must satisfy both *Strickland* prongs to prevail on his ineffective-assistance claim, the Court "need not address both components of the inquiry if [Alstad] makes an insufficient showing on one." *Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 697). Since Alstad has failed to demonstrate deficient performance of counsel at sentencing, he has failed to show ineffective assistance on this ground.

Yet even if Dunn had objected pursuant to Alstad's arguments, Alstad has failed to show a reasonable probability that his sentence would have been different. To meet his burden, Alstad must demonstrate "a probability sufficient to undermine confidence in the outcome" that his sentence would have been different "but for the deficient performance." *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013).

-17-

Alstad conclusively asserts that, absent Dunn's allegedly deficient sentencing strategy, his "110-month federal sentence would have been at least one (1) month lesser." (Def.'s Reply at 7.) However, as mentioned, the Court sentenced Alstad to a below-range sentence in part because of Dunn's sentencing advocacy. Alstad has not demonstrated how his sentence would have been different.

Because Alstad has not demonstrated deficient performance or prejudice based on Dunn's sentencing advocacy, the Court will deny him relief under § 2255 on this ground.

### C.    Appeal

Finally, Alstad argues he was denied effective assistance because Dunn failed to appeal his sentence even though Alstad instructed him to do so. Because Alstad and Dunn provided conflicting statements regarding whether Alstad requested Dunn to appeal after sentencing, the Court conducted an evidentiary hearing on the matter. *Witthar*, 793 F.3d at 923–24 (instructing courts to hold evidentiary hearings under such circumstances); *Crutcher v. United States*, 2 Fed. App'x 658, 660 (8th Cir. 2001) (same).

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). This is because a client "reasonably relies upon counsel to file" an appeal, and an attorney's "failure to do so cannot be considered a strategic decision," as it is "a purely ministerial task." *Id.* That said, an attorney need not always file an appeal;

the appropriate inquiry is whether the attorney acted reasonably under all the circumstances. *Id.* at 478.

The primary issue is whether Alstad instructed Dunn to file a notice of appeal. This presents a question of fact. *Holloway v. United States*, 960 F.2d 1348, 1357 (8th Cir. 1992). If the Court finds that Alstad did ask Dunn to file a notice of appeal, then Alstad will have demonstrated ineffective assistance because prejudice is presumed under such circumstances. *Witthar*, 793 F.3d at 922–23. The Court need not consider whether the intended appeal would be successful or meritorious. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). Moreover, prejudice would be presumed even though Alstad waived his right to appeal a sentence of imprisonment under 150 months. *Garza v. Idaho*, 586 U.S. 232, 242–44 (2019); *Witthar*, 793 F.3d at 923 (listing cases).

Alstad claims that, after sentencing, "[Alstad] expressed disappointment with the sentence . . . and instructed [Dunn] to file a Notice of Appeal on his behalf. But for some reason [Dunn] never did file his Notice of Appeal as [Alstad] instructed him to do." (Def.'s Mem. at 18, Aug. 18, 2023, Docket No. 494.) At the evidentiary hearing, Alstad offered no evidence to support his claim that he asked Dunn to file a notice of appeal other than his bare assertions.

"A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Barger*, 204 F.3d at 1182. Indeed, the Court

can reject Alstad's version of events if he fails to produce corroborating evidence of his instruction to file an appeal. *See, e.g.*, *Green v. United States*, 323 F.3d 1100, 1102–03 (8th Cir. 2003) (finding no error under similar circumstances).

The issue boils down to whether to credit Alstad's or Dunn's testimony. *Walking Eagle*, 742 F.3d at 1082. At the evidentiary hearing, Dunn explained his years of experience litigating as a criminal defense attorney on cases similar to this one. He testified that when a client wishes to appeal, his files the notice of appeal, which takes minutes of his time, before transferring the case to another attorney to handle the appeal process. In addition, Dunn explained that soon after the sentencing hearing, he sent a letter to Alstad confirming their conversation that Alstad did not wish to file an appeal, and that at no point did Alstad indicate that he wanted Dunn to file a notice of appeal.

Based on the testimony at the evidentiary hearing and a comprehensive review of the record, the Court finds Alstad's testimony that he asked Dunn to file a notice of appeal to be non-credible. Under the circumstances of this case, the Court cannot credit Alstad's testimony. Instead, the record supports Dunn's testimony, and it is difficult to conceive of a reason why Dunn would not have filed a notice of appeal if Alstad had instructed him to do so.

Alstad argues that Dunn's testimony is less credible because this case was not as important to Dunn as it was to Alstad, such that Dunn might have misremembered whether Alstad asked him to file a notice of appeal. However, this argument is

contradicted by the letter that Dunn sent to Alstad confirming their conversation that Alstad did not wish to file an appeal.  Even if Alstad never received the letter, which Alstad argues, it seems unlikely that Dunn would have misremembered whether Alstad had asked him to file a notice of appeal when he sent the letter, which was about a week after the sentencing hearing.  *See Rodriguez v. United States*, 964 F.2d 840, 841–42 (8th Cir. 1992) (concluding that even when such a letter does not reach a defendant in time, it "supports the attorney's contention that [the defendant] did not ask the attorney to appeal").

Furthermore, Alstad's argument that Dunn refused to file a notice of appeal because he did not want to go up against the prosecutor again makes little sense, as Dunn testified that his role is only to file the notice of appeal, not to actually litigate the case through the appeal process.

Without any logical explanation for why an experienced criminal defense attorney who need only spend minutes of his time to file a notice of appeal would not do so when asked, the Court finds that Dunn's testimony is more credible, and that Alstad never instructed Dunn to file an appeal.

Having determined that Alstad did not instruct Dunn to file a notice of appeal, the next issue is whether Dunn consulted with Alstad about an appeal and, if not, "whether [his] failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478.

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  When considering these factors, courts "must take into account all the information counsel knew or should have known" at the time.  *Id.*  To satisfy the duty to consult, counsel must advise a defendant of the advantages and disadvantages of appealing and make a reasonable effort to determine his wishes." *Keys v. United States*, 545 F.3d 664, 647 (8th Cir. 2008).

Here, it is clear from the record that Alstad was instructed on his right to appeal. There is evidence that Dunn consulted with Alstad about his right to appeal before and immediately following sentencing, along with testimony from Dunn that Alstad never indicated a desire to appeal.  Indeed, the Court itself instructed Alstad on his right to appeal during sentencing.  (*E.g.*, Sentencing Hr'g Tr. at 21:5–11, 21:14–24.)  Such circumstances are sufficient to satisfy Dunn's obligations under the duty to consult.  *See Keys*, 545 F.3d at 647.

Because the record indicates that Dunn consulted with Alstad about his right to appeal, "his subsequent performance is professionally unreasonable only if he fail[ed] 'to follow the defendant's express instructions with respect to an appeal.'"  *Id.* (quoting *Flores-Ortega*, 528 U.S. at 478).  As noted above, the Court finds that Alstad did not

indicate a desire to appeal.  Dunn was merely following Alstad's instruction by not filing an appeal, which Alstad has not established fell "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.

Alstad appears to argue that Dunn should have reasonably anticipated that Alstad would have wanted to appeal, despite the plea agreement's waiver of the right to appeal sentences less than 150 months and Alstad's ultimate 110-month sentence.  Alstad is correct that appeal waivers in plea agreements are not always enforceable. *United States v. Andis*, 333 F.3d 886, 889–92 (8th Cir. 2003) (discussing waivers of appeal).  But the exception to the enforceability of an appeal waiver is "extremely narrow," as "[a]ny sentence imposed within the statutory range is not subject to appeal." *Id.* at 892.  Here, it was reasonable for Dunn to not have filed an appeal despite Alstad's lack of instructions to the contrary because a rational defendant likely would not have wanted to appeal given Alstad's guilty plea and below-guidelines sentence. *Flores-Ortega*, 528 U.S. at 480 (noting that one "highly relevant factor" is whether the conviction follows a guilty plea, because a guilty plea "reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings").

Because Alstad has not demonstrated deficient performance or prejudice based on Dunn's failure to file a notice of appeal, the Court will deny him relief under § 2255 on this ground.

In sum, Alstad has failed to establish deficient performance or prejudice based on Dunn's alleged conflict of interest, sentencing advocacy, or failure to file a notice of appeal. Accordingly, the Court will deny Alstad's request for relief under § 2255.

### D.    Certificate of Appealability

A final order in a proceeding under § 2255 can only be appealed "if a circuit justice or judge issues a certificate of appealability," which may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). To make a substantial showing, the applicant must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up); *see also Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994).

The question in this case is whether Alstad was denied effective assistance of counsel. The Court finds, based on careful consideration of the record, that he was not denied effective assistance of counsel. The Court also finds that Alstad has not demonstrated that the issues in this action are debatable among jurists of reason, that a court could resolve them in a different manner, or that they deserve encouragement to proceed further. Accordingly, the Court declines to grant a certificate of appealability.

### CONCLUSION

The Court has identified nothing in the record suggesting that Dunn had a conflict of interest or provided ineffective assistance, and Alstad has provided nothing but

conclusory statements that his attorney failed to file an appeal after Alstad asked him to do so.  Because the Court finds that Alstad's motion is unsupported by the record, the Court will deny his Motion to Vacate under 28 U.S.C. § 2255 and decline to grant a certificate of appealability.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Vacate Under 28 U.S.C. § 2255 [Docket No. 493] is **DENIED**; and

2. No certificate of appealability is issued.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  March 11, 2025                          s/John R. Tunheim
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                United States District Judge